# EXHIBIT C

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH ALTMAN,
    an individual;
THE LAW OFFICE OF KEITH ALTMAN,
    a Michigan PLLC.

    Plaintiffs,

v.

JOSEPH D. LENTO,
    an individual;
LENTO LAW FIRM;
    A Pennsylvania LLC;
LENTO LAW GROUP,
    a Pennsylvania foreign LLC;

    Defendants.

File No. 2:24-cv-13345-LVP-APP
Hon. Susan K. DeClercq

_____

**DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND 13(a) OR IN THE ALTERNATIVE TRANSFER THE MATTER TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. §1404(a) OR IN FURTHER ALTERNATIVE STAY THIS ACTION PENDING RESOLUTION OF THE APPEAL CURRENTLY BEFORE THE THIRD CIRCUIT**

NOW COME Defendants, Lento Law Firm, LLC ("LLF"), Lento Law Group, PC ("Group"), and Joseph D. Lento ("Lento") (collectively "Lento Defendants"), by and through their attorneys, Hubbard Snitchler & Parzianello PLC, moves this Honorable Court to:

1

a. Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim for which relief can be granted;

b. Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 13(a) for previously failing to assert a compulsory counterclaim, making the current Complaint moot; or, in the alternative,

c. Transfer venue to the District of New Jersey pursuant to 28 U.S.C. §1404(a); or, in further alternative,

d. Stay the proceedings pending resolution of the appeal currently before the United State Court of Appeals for the Third Circuit.

In support thereof, Lento Defendants rely on their accompanying Brief in Support of this Motion.

Pursuant to LR 7.1(a) Defendants' counsel certifies that she sought concurrence. Plaintiffs have not concurred in the relief sought.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

_/s/ Grace C. Ceccolini_
John A. Hubbard (P39624)
Eric A. Parzianello (P42797)
Grace C. Ceccolini (P86375)
Attorneys for Defendants
801 W. Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170
(313) 672.7300

Dated: February 12, 2025     gceccolini@hspplc.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH ALTMAN,
     an individual;
THE LAW OFFICE OF KEITH ALTMAN,
     a Michigan PLLC.

     Plaintiffs,

v.

JOSEPH D. LENTO,
     an individual;
LENTO LAW FIRM;
     A Pennsylvania LLC;
LENTO LAW GROUP,
     a Pennsylvania foreign LLC;

     Defendants.

File No. 2:24-cv-13345-LVP-APP
Hon. Susan K. DeClercq

---

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6) AND 13(a) OR IN THE ALTERNATIVE TRANSFER THE MATTER TO THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. §1404(a) OR IN FURTHER ALTERNATIVE STAY THIS ACTION PENDING RESOLUTION OF THE APPEAL CURRENTLY BEFORE THE THIRD CIRCUIT**

# Table of Contents

Table of Authorities ......................................................................................................... ii

Concise Statement of Issues Presented ............................................................................. iv

Controlling Authority ....................................................................................................... v

INTRODUCTION ............................................................................................................ 1

FACTS ............................................................................................................................. 3

    I.     Background on Relationship Between the Parties ........................................... 3

    II.    New Jersey Procedural Posture ..................................................................... 6

        A.    The First Federal Case – LLF & Lento Sue Plaintiffs in DCNJ ................... 6

        B.    LLF & Lento's Federal Case is Dismissed in the DCNJ ............................... 8

        C.    New Jersey State Court Litigation – LLF & Lento Sue Plaintiffs in New Jersey Superior Court ..................................................................................................... 8

        D.    DCNJ 2 is Stayed Pending Third Circuit Appeal ......................................... 8

LAW AND ARGUMENT ................................................................................................ 9

    I.     Dismissal is Warranted because Plaintiffs' Claims should have been brought as Compulsory Counterclaims in the New Jersey action. .............................................. 9

    II.    Dismissal is Warranted because Plaintiffs have Failed to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6). ................................................................................................ 11

        A.    Count I - Breach of Contract/Breach of Implied Contract .......................... 11

        B.    Count II - Promissory Estoppel .................................................................. 14

        C.    Count III – Malicious Prosecution .............................................................. 16

    III.   Alternatively, this Matter should be Transferred to New Jersey. ................... 18

        A.    Judicial Economy Favors Transfer .............................................................. 19

        B.    Interests of Justice Weigh Heavily in Favor of Transfer ............................. 20

    IV.   In Further Alternative, this Matter should be Stayed Pending the Third Circuit Court of Appeals Ruling. .............................................................................................. 21

        A.    The Third Circuit Appeal May Have a Dispositive Effect on this Case ....... 21

        B.    Judicial Economy Strongly Favors a Stay ................................................... 22

        C.    Public Welfare Would Not be Adversely Affected ...................................... 23

        D.    Neither Party Would be Prejudiced by a Stay .............................................. 23

CONCLUSION ............................................................................................................... 23

i

## **Table of Authorities**

**Cases**

*AFT Michigan v Michigan*, 303 Mich App 651 (2014) ........................................ *11*

*Bank of America, NA v First American Title Ins Co.*, 499 Mich 74 (2016) .......... *11*

*Barnard v Hartman*, 130 Mich App 692; 344 N.W.2d 53 (1983) ................... *17, 18*

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .................................................. *12*

*Brown v. Considine*, 310 N.W.2d 441 (Mich. Ct. App. 1981) .............................. *12*

*COEUS, LLC v City of Walled Lake*, unpublished opinion of the Court of Appeals, issued January 20, 2022 (Docket No. 353844), 2022 WL 188742........................ *16*

*Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679; N.W.2d 502 (2019)……………………........................................................................ *14*

*Friedman v Dozorc*, 412 Mich. 1; 312 N.W.2d 585 (1981) ............................ *16, 17*

*Marrero v McDonnell Douglas Capital Corp*, 200 Mich. App. 438 (1993) ......... *15*

*Novak v. Federspiel*, 646 F. Supp. 3d 878 (E.D. Mich. 2022) ............................. *21*

*Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273 (6th Cir. 1991) ..................................................................................................................... *9, 10*

*Silver Capital Group, LLC v. Underwood*, unpublished opinion of the Court of Appeals, issued March 17, 2022 (Docket No. 355037) 2022 WL 815365............ *18*

*State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993) ..................... *15, 16*

*United States v. University of TN Medical Center Home Care Services, LLC*, No 3:17-cv-96, 2021 WL 3743189 (E.D. Tenn. Aug. 23, 2021) ................................... *9*

*Ziegler v. Polaris Industries, Inc.*, No. 1:21-CV-956, 2023 WL 7448736 (W.D. Mich. Apr. 24, 2023)……………………........................................................................ *19*

ii

**Statutes & Rules**

*28 U.S.C. § 1404(a)* ................................................................. 18, *19, 20*

*Fed. R. Civ. P. 12(b)(1)* ..................................................................... *9*

*Fed. R. Civ. P. 12(b)(6)* ................................................................. *9, 11*

*Fed. R. Civ. P. 13(a)* ..................................................................... *9, 10*

## Concise Statement of Issues Presented

1. Whether Plaintiffs' claims should be dismissed under Fed. R. Civ. P. 13(a) because they arise from the same transaction or occurrence as the prior litigation in the District of New Jersey and were required to have been brought as compulsory counterclaims in that action?

**Defendants' Answer: <u>Yes.</u>**
**Plaintiffs' Answer: <u>No.</u>**

2. Whether Plaintiffs' Complaint fails to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), where their breach of contract, promissory estoppel, and malicious prosecution claims are vague, conclusory, and legally deficient?

**Defendants' Answer: <u>Yes.</u>**
**Plaintiffs' Answer: <u>No.</u>**

3. Whether, in the alternative, this case should be transferred to the District of New Jersey pursuant to 28 U.S.C. § 1404(a) in the interest of judicial economy, fairness, and to prevent forum shopping, given that the same parties and issues have been extensively litigated in New Jersey courts?

**Defendants' Answer: <u>Yes.</u>**
**Plaintiffs' Answer: <u>No.</u>**

4. Whether, in further alternative, this Court should stay proceedings pending resolution of the Third Circuit appeal, which could be dispositive of the claims Plaintiffs attempt to relitigate in this case?

**Defendants' Answer: <u>Yes.</u>**
**Plaintiffs' Answer: <u>No.</u>**

# **Controlling Authority**

Dismissal and Compulsory Counterclaims

- Fed. R. Civ. P. 13(a).
- *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273 (6th Cir. 1991).

Dismissal and 12(b)(6)

- Fed. R. Civ. P. 12(b)(6).
- *Brown v. Considine*, 310 N.W.2d 441 (Mich. Ct. App. 1981).
- *State Bank of Standish v. Curry*, 500 N.W.2d 104 (Mich. 1993).
- *Barnard v Hartman*, 344 N.W.2d 53 (1983).

Transfer to New Jersey

- 28 U.S.C. § 1404(a).
- *Ziegler v. Polaris Industries, Inc.*, No. 1:21-CV-956, 2023 WL 7448736 (W.D. Mich. Apr. 24, 2023).

Stay the Matter Pending Third Circuit Appeal

- *Novak v. Federspiel*, 646 F. Supp. 3d 878 (E.D. Mich. 2022).

Defendants, Lento Law Firm, LLC ("LLF"), Lento Law Group, PC ("Group"), and Joseph D. Lento ("Lento") (collectively "Lento Defendants"), by and through their attorney, Hubbard Snitchler and Parzianello PLC, states as follows for their Brief in Support of Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and 13(a), or In the Alternative Transfer the Matter to the District of New Jersey pursuant to 28 U.S.C. §1404(a) or In Further Alternative, Stay this Action Pending Resolution of the Appeal Currently Before the Third Circuit:

## **INTRODUCTION**

This case is nothing more than Plaintiffs' latest attempt to repackage claims that have already been litigated, dismissed, and are currently the subject of an appeal. It is a product of a failed professional collaboration and subsequent disputes between Plaintiffs Keith Altman ("Altman") and The Law Office of Keith Altman, PLLC ("LOKA") (collectively "Plaintiffs") and Lento Defendants. Unable to obtain a favorable outcome in the United States District Court for the District of New Jersey ("DCNJ")[1], Plaintiffs now seek a second bite at the apple by refiling claims that should have been brought as compulsory counterclaims in the prior litigation.

---

[1] Plaintiffs did not name Defendant LLG in the DCNJ counterclaim and assert no specific allegations against LLG in this matter. LLG has no involvement in the underlying facts and was not a party to any alleged contractual agreement or relationship. LLG has been improperly dragged into this lawsuit.

This forum-shopping effort is procedurally improper and legally precluded. Plaintiffs actively litigated issues in New Jersey that arise out of the same transaction and/or occurrence, even asserting a counterclaim claiming a settlement of the disputes of the same alleged agreements that form the foundation of their Complaint here. After their counterclaim was dismissed, they filed an appeal to the Third Circuit, which remains pending. Rather than awaiting that outcome, Plaintiffs now attempt to circumvent that ruling by reasserting their claims in Michigan.

Plaintiffs' strategy is clear: they are not bringing new claims, they are attempting to relitigate matters that have already been adjudicated. Rule 13(a) of the Federal Rules of Civil Procedure prohibits this type of piecemeal litigation. Plaintiffs had an obligation to assert these claims as counterclaims in the prior litigation, and their failure to do so forever bars them from raising them now.

Lento Defendants[2] now move to dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(6) and 13(a). Plaintiffs' claims for breach of contract, promissory estoppel, and malicious prosecution are barred because they arise out of the same transaction or occurrence at issue in the New Jersey action and should have been asserted as compulsory counterclaims in that case. In the alternative, Defendants respectfully request that this Court transfer the

---

[2] As discussed in greater detail below, at all times, Defendant Joseph Lento acted solely in his capacity as an agent of LLF at all relevant times. Plaintiffs' inclusion of Lento individually is nothing more than a thinly veiled attempt to improperly pierce LLF's corporate veil.

**2**

matter to the District of New Jersey, where related litigation is ongoing, or stay the proceedings pending resolution of Plaintiffs' Third Circuit appeal. These remedies are necessary to avoid duplicative litigation, conserve judicial resources, and ensure consistent rulings on issues involving the same parties, facts, and legal questions.

## FACTS

### I.      Background on Relationship Between the Parties

In 2019, Defendant Lento became aware of Plaintiff Altman's reputation as an attorney when considering him for a future associate position with Lento's law firm. In the early 2020, Altman, as the principal of LOKA, approached Lento and LLF with a proposal for the firms to collaborate on student disciplinary cases. Lento and Altman discussed the proposal over the phone. In March 2020, Lento, on behalf of LLF and Altman, on behalf of LOKA entered into an oral agreement with respect to the shared handling of student defense matters involving such things as academic misconduct, student code of conduct violations, and Title IX violations, and other educational related matters ("shared student defense cases").

From approximately March 2020 to June 2021, LLF designated its student defense cases to LOKA under the terms of their oral agreement. LLF would pay LOKA for its work on the designated student defense cases.

In June 2021, LOKA threatened to leave the agreement with LLF, cease work on active cases, and stop paying its employees unless LLF paid LOKA $200,000. LOKA's threats to walk away from active cases with court dates and deadlines created a significant risk that LLF's clients would be left unrepresented, LLF's business would be damaged, and that LLF would lose money and reputation. Under this duress, LLF capitulated and paid LOKA $200,000 over the following three months as an advance on potential future fees. This payment did not alter the formal terms of the parties' oral agreement.

LOKA and LLF continued to collaboratively work on the shared student defense cases until November 2021, when LOKA again threatened to stop working on the shared student defense cases unless LLF paid LOKA an additional $365,000. Fearing a tremendous loss of business and income, LLF again succumbed to LOKA's threats and pressure and paid an additional $200,000 under duress, once again as an advance on fees – not a modification to the oral agreement.

Sometime in January/February 2022, LOKA once again issued an ultimatum: it would stop working on LLF's cases unless the fee-sharing arrangement was changed in LOKA's favor. Under duress, LLF conceded to LOKA's demand to alter the split on pre-litigation shared student defense cases from 60/40 to 55/45 (a five percent adjustment in LOKA's favor) effective March

1, 2022. Additionally, LLF agreed to pay LOKA 25% of consultation fees earned on pre-litigation student defense case retroactive to January 1, 2022. LOKA had previously not been paid any part of the consultation fees. With regard to the shared student defense litigation matters, LLF, under the same coercive pressure, agreed to adjust the fee split from 50/50 to 33.33% going to LLF and 66.67% going to LOKA effective March 1, 2022. Importantly, despite these coerced adjustments, all other terms of the oral agreement remained unchanged.

The parties continued to collaborate on the shared student defense matters. However, in May 2022, LOKA again threatened to stop working on active cases and lay-off its employees unless LLF paid LOKA $130,000/month. Facing the same risk of disruption to its business and potential harm to its clients, LLF, under duress, caved to this monthly payment starting in June 2022.

One month later, in July 2022, LOKA escalated its demands, yet again, threatening to cease work on active cases unless LLF increased its payments to LOKA to $165,000 per month, with further increases to follow. LLF, once again, was faced with the potential collapse of its practice and feared the financial and reputational damage that would result from LOKA's threats.

Finally, on July 24, 2022, LOKA made its most aggressive demand: a $500,000 payment within 24 hours. LOKA threatened that it would file a state bar complaint against LLF and Lento personally and inform their student defense

**5**

clients that LOKA would stop working on their cases because "Joe did not pay me," and to simultaneously file a lawsuit against LLF. While this blatant attempt at economic extortion again created substantial fear of financial and reputational harm, LLF refused to comply with LOKA's demand. As a result, the parties' working relationship was terminated. Following the termination, the parties engaged in settlement discussions; however, no final settlement agreement was ever entered into or executed.

## II.      New Jersey Procedural Posture

Following the termination of their working relationship, LLF and Lento initiated litigation against Plaintiffs, sparking multiple proceedings across different forums. The litigation history is complex involving both federal and state courts, a counterclaim, an appeal to the Third Circuit, and a stay of proceedings in a second federal case in New Jersey. Below is a comprehensive procedural timeline outlining the relevant filings, rulings, and pending matters.

A. <u>The First Federal Case – LLF & Lento Sue Plaintiffs in DCNJ</u>

- **August 1, 2022** – LLF and Lento filed a Complaint (**Exhibit 1**) in the United States District Court for the District of New Jersey ("DCNJ") (Case No. 1:22-cv-04840), asserting claims against Plaintiffs. Notably, Plaintiffs

did not contest the jurisdiction of the New Jersey court, and, in fact, agreed that New Jersey law applies to this dispute.[3]

- **November 14, 2022** – Plaintiffs moved to dismiss the Complaint.

- **August 1, 2023** – After briefing, an opinion was issued denying the motion to dismiss the Complaint. Plaintiffs subsequently filed their Answer to the Amended Complaint asserting a Counterclaim for Breach of Contract of an alleged written settlement agreement against LLF and Lento (**Exhibit 3**), relying on the same factual allegations they now use to support their current Complaint.

- **Late 2023 through Spring 2024** – Extensive discovery took place in DCNJ, with both parties engaging in document productions, interrogatories, and depositions.

- **Early 2024** – The DCNJ dismissed Plaintiffs' Counterclaim against LLF and Lento. **Exhibit 2**.

- **May 16, 2024** – Plaintiffs filed an appeal of the dismissal of their counterclaim in the U.S. Court of Appeals Third Circuit, which remains pending.

---

[3] "The parties tacitly agree that New Jersey Law applies to this dispute." **Exhibit 2** at page 6 fn 3.

B. <u>LLF & Lento's Federal Case is Dismissed in the DCNJ</u>

The Court sua sponte dismissed LLF and Lento's First Amended Complaint, holding that it lacked federal question jurisdiction under 28 U.S.C. § 1331. In its ruling, DCNJ acknowledged that significant discovery had already been conducted and explicitly noted that the parties could "use any discovery they have obtained thus far to pursue their state-law claims in state court." **Exhibit 4** at page 7. Based on this guidance, LLF and Lento refiled their claims in New Jersey state court.

C. <u>New Jersey State Court Litigation – LLF & Lento Sue Plaintiffs in New Jersey Superior Court</u>

- **Spring 2024** – LLF and Lento filed their Complaint in the Superior Court of New Jersey, Middlesex County, Law Division (Docket No. MID-L-002264-24) (**Exhibit 10**), asserting their state-law claims against Plaintiffs. Rather than proceeding in New Jersey state court, Plaintiffs removed the case back to federal court – initiating case no. 1:24-cv-5150 ("DCNJ 2").

D. <u>DCNJ 2 is Stayed Pending Third Circuit Appeal</u>

Upon removal, and after show cause and additional filings, the DCNJ2 Court issued a stay of the action pending the Third Circuit's decision of the Appeal. **Exhibit 5**.

At every stage of the prior New Jersey litigation, Plaintiffs had the opportunity to assert these current Michigan claims. Instead, they chose to litigate

piecemeal, asserting some claims while holdings others in reserve, only to file them here after suffering an adverse ruling. This type of procedural maneuvering is exactly what Rule 13(a) seeks to prevent.

## LAW AND ARGUMENT

I.    **Dismissal is Warranted because Plaintiffs' Claims should have been brought as Compulsory Counterclaims in the New Jersey action.**

Fed. R. Civ. P. 13(a) provides in relevant part:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Claims that are not brought as compulsory counterclaims pursuant to Rule 13 are subject to dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *United States v. University of TN Medical Center Home Care Services, LLC*, No 3:17-cv-96, 2021 WL 3743189 (E.D. Tenn. Aug. 23, 2021). A party's failure to bring a compulsory counterclaim in an original action "forever bars it" from "raising the claim in another action." *Sanders v. First Nat'l Bank & Trust Co. in Great Bend*, 936 F.2d 273, 277 (6th Cir. 1991).

Here, Counts I (Breach of Contract) and II (Promissory Estoppel) are directly related to the agreements and alleged obligations that were the foundation of the original claims and counterclaims in the DCNJ action. Count III (Malicious

Prosecution) hinges on the proceedings and litigation conduct in the DCNJ action, making it indisputably connected to that transaction or occurrence.

Plaintiffs were active participants in the New Jersey action, filing counterclaims against some of the Defendants. They had full knowledge of the facts and circumstances underlying their claims at the time of the original litigation. Their failure to assert these claims as counterclaims in the DCNJ case constitutes a waiver of the right to bring them in any subsequent action. *Id*.

Plaintiffs' claims for breach of contract, promissory estoppel, and malicious prosecution are barred because:

1. They arise from the same facts as the New Jersey action.

2. Plaintiffs failed to assert them as counterclaims in that action.

3. Allowing these claims to proceed now would undermine the policy objectives of Rule 13(a).

The law does not allow litigants to withhold claims in one forum, wait to see how the first case unfolds, and then file those claims elsewhere in the hopes of a more favorable result. Plaintiffs had full knowledge of these claims at the time of the DCNJ litigation. Their failure to raise them as counterclaims forever bars them from doing so now. *Id*.

Plaintiffs cannot dispute that their claims arise from the same operative facts. Therefore, Rule 13(a) required them to assert these claims as counterclaims in the

**10**

DCNJ action. Accordingly, dismissal of Plaintiffs' Complaint in its entirety is warranted.

## II.     Dismissal is Warranted because Plaintiffs have Failed to State a Claim Pursuant to Fed. R. Civ. P. 12(b)(6)

### A. Count I - Breach of Contract/Breach of Implied Contract

A claim for breach of contract requires Plaintiffs to establish the following elements: "(1) a contract, (2) a breach of that contract, and (3) damages inuring to the party who did not breach the contract." *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100 (2016). "A valid contract has five elements: (1) parties competent to contract; (2) a proper subject matter; (3) a legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation." *AFT Michigan v Michigan*, 303 Mich App 651, 660 (2014) (citations and quotation marks omitted).

Here, Plaintiffs fail to allege sufficient facts to plausibly state a claim for breach of contract or breach of implied contract. Plaintiffs vaguely allege the existence of an oral agreement, but they fail to specify the essential terms of the alleged agreement, including the rights and obligations of each party. While Plaintiffs claim that the essential terms were later "memorialized in writings," they do not attach or describe these writings in sufficient detail to demonstrate mutual assent or enforceability. Without clear and specific allegations regarding the contract's terms, this element cannot be met.

11

Plaintiffs do not articulate what specific obligation under the alleged agreement was breached. Merely asserting the existence of a breach, without identifying the nature of the breach or the conduct constituting such a breach, is insufficient to state a claim. Rule 8(a)(2) requires more than conclusory statements; it demands factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs fail to demonstrate how they have been injured as a result of the alleged breach. Damages must be specifically pleaded and linked to the alleged breach of contract. Plaintiffs' failure to describe the nature, extent, or causal relationship of their damages to the breach further undermines the viability of their claim.

1. Plaintiffs' Breach of Contract Claim Fails Because Parties to a Contract Must be Known.

A fundamental principle of contract law is that the identities of the contracting parties must be known and mutually understood at the time of formation. "The rule that there must be a meeting of the minds to form a contract involves a common understanding of the identities of the parties." *Brown v. Considine*, 310 N.W.2d 441, 443 (Mich. Ct. App. 1981) (citing 17 Am.Jur.2d, Contracts, s 15, p. 353).

Plaintiffs state in their Complaint that "[i]t is impossible for Plaintiffs to differentiate between the various Lento defendants, and they will therefore be

12

referred to collectively as the Lento Defendants." **PageID.2** at ¶9. Plaintiffs' statement is fatal to their breach of contract claim since there was no mutual assent with all of the Lento Defendants. Plaintiff did not and cannot allege any relationship with LLG during the relevant time period. Further, Joseph Lento was not acting in his individual capacity but on behalf of LLF.

Plaintiffs now assert, for the first time, a claim or alleged relationship with Defendant Lento Law Group – an entity they have never previously implicated in any litigation spanning multiple years in New Jersey. This abrupt shift is not only procedurally suspect but also highlights the absence of any actual contractual relationship with Lento Law Group.

Tellingly, Plaintiffs fail to articulate any allegations with particularity against Lento Law Group. This deficiency is not due to oversight – it is because no such allegations exist. Plaintiffs never interacted with, contracted with, or had any relationship with Lento Law Group, and their inability to plead specific facts confirms this reality.

At all relevant times, Lento was acting his capacity as a representative of LLF, not in a personal or independent capacity. Plaintiffs' failure to distinguish between Lento, individually, and LLF as the entity through which any alleged contract was formed is both legally improper and fatal to their claim. Plaintiffs' failure to differentiate between Lento and LLF improperly disregards the well-

**13**

establish legal distinction between a business entity and its agents – the "corporate veil."

Equally damaging to their claim is Plaintiffs' own admission that they cannot distinguish between the alleged contracting parties. Contract formation requires mutual assent between identifiable parties, an impossibility when even Plaintiffs themselves do not know who they allegedly contracted with. If Plaintiffs cannot specify who they contracted with, they cannot plausibly allege a "meeting of the minds" and their breach of contract claim fails as a matter of law.

Plaintiffs' claim is not merely deficient, it is fundamentally flawed. By their own admission, they are unable to identify the contract parties, making their breach of contract claim legally impossible under Michigan law. The Court should accordingly dismiss this claim in its entirety.

B. <u>Count II - Promissory Estoppel</u>

To establish a claim of promissory estoppel, Plaintiffs must present proof of the following elements: "(1) a promise, (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance or forbearance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; N.W.2d 502, 524 (2019) (internal quotations omitted). The doctrine of

**14**

promissory estoppel is a powerful legal tool, but it is not a limitless remedy. Courts apply it "cautiously", recognizing the potential for abuse. *Marrero v McDonnell Douglas Capital Corp*, 200 Mich App 438, 442 (1993). Michigan courts require a "clear and definite" promise. *State Bank of Standish v. Curry*, 500 N.W.2d 104, 108 (Mich. 1993). A fundamental requirement is that the promise must be clear and definite. "[T]he sine qua non of the theory of promissory estoppel is that the promise be clear and definite[.]" *Id.* at 85 (1993).

Plaintiffs' complaint is riddled with vague and ambiguous allegations regarding the alleged promise made by "Lento Defendants." Simply put, Plaintiffs' complaint falls far short of the standard necessary to sustain a promissory estoppel claim. Plaintiffs merely assert that "Defendants made certain verbal assertions and promises to Plaintiffs, with the specific intent and purpose for Plaintiffs to rely on them to Plaintiffs' detriment." **PageID.8** at ¶58. Plaintiffs further state, "Specifically, Plaintiffs worked on Defendants' cases, in reasonable reliance on Defendants' assurances that the herein-described agreed-upon payments would be made." **PageId.9** at ¶60. It is fatally flawed that Plaintiffs do not identify who specifically made the alleged promise or the exact terms of the alleged promise. The Defendants are three separate entities. If Plaintiffs entered into an agreement, they should know who they entered into that agreement with. The vague and conclusory allegation fails to identify any specific promise made by any of the

Defendants, or what entity allegedly made the promise. It is unclear what the promise was, who made it, when it was made, and what the terms of the promise were. This lack of clarity and definiteness is fatal to their claim. *State Bank of Standish v Curry*, 442 Mich 76, 85-86 (1993) ("indefinite, equivocal, or not specifically demonstrative of the intention respecting future conduct, cannot serve as the foundation for an actionable reliance.").

The Michigan Court of Appeals has consistently held that a vague and indefinite promise cannot support a claim of promissory estoppel, and because Plaintiffs do not assert a promise that is clear and definite for their claim of promissory estoppel, the claim must fail as a matter of law. *See COEUS, LLC v City of Walled Lake*, unpublished opinion of the Court of Appeals, issued January 20, 2022 (Docket No. 353844), 2022 WL 188742 at *8 (2022) ("because the promise on which plaintiff relies for its claim of promissory estoppel is not clear and definite, the claim fails as a matter of law.") attached as **Exhibit 6**.

C. Count III – Malicious Prosecution

In a malicious prosecution of civil proceedings, the elements are "(1) prior proceedings terminated in favor of the present plaintiff, (2) absence of probable cause for those proceedings, and (3) malice," which is "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based." *Friedman v Dozorc*, 412 Mich. 1, 48; 312 N.W.2d 585, 603 (1981) (quotation

**16**

marks and citations omitted). The plaintiff must also prove "special injury equivalent to a seizure of property as a result of the defendant's institution of civil proceedings." *Id*. at 38-41. A "special injury" is an "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, and injury to one's property." *Id*. at 32-33. It must be an injury that would not necessarily occur in all lawsuits alleging similar causes of action. *Barnard v Hartman*, 130 Mich App 692, 695-696; 344 N.W.2d 53, 54 (1983).

In this case, Plaintiffs' malicious prosecution claim fails to satisfy several of the necessary elements. First, there was not a dismissal of the entirety of the New Jersey action based on the merits. Partial summary disposition was granted to Plaintiffs, and only a set number of those claims dismissed by the New Jersey District Court were with prejudice. **See Exhibit 7**. Had the DCNJ Court believed that there was no merit to any of Lento Defendants claims, the entirety of the claims would have been dismissed with prejudice. As it stands, prior proceedings were not terminated in favor of the present Plaintiffs. Along those same lines, Plaintiffs had a counterclaim that was dismissed in the DCNJ proceedings. **Exhibit 2**. Plaintiffs consented to New Jersey jurisdiction and raised no issues at that time.

Second, Plaintiffs have further failed to allege that they sustained any special injuries as a result of the New Jersey action. Without a suffering of a "special injury" as a result of the New Jersey lawsuit, summary disposition on the malicious

17

prosecution claim must be granted. Moreover, any argument that Plaintiffs suffered damage to their reputations or were forced to incur legal fees as a result of the New Jersey action, these injuries are not unusual and are "of the same kind as that normally flowing from the maintenance of similar actions[.]" *Silver Capital Group, LLC v. Underwood*, unpublished opinion of the Court of Appeals, issued March 17, 2022 (Docket No. 355037) 2022 WL 815365 at *5 (2022) (quoting *Barnard v. Hartman*, 130 Mich. App. at 695-696; 344 N.W.2d at 54 (1983)) attached as **Exhibit 8**.

Third, Plaintiffs have not adequately alleged that Lento Defendants lacked probable cause to initiate the New Jersey action, nor have they provided any specific allegations that the initiation of the New Jersey action was done with malice. Without evidence suggesting that Lento Defendants knew or should have known that their claims were "baseless", it cannot be said that they acted without probable cause.

In light of these deficiencies, Plaintiffs' malicious prosecution claim is fatally flawed and must fail for failure to state a claim and because this claim should have been brought in the DCNJ action as a compulsory counterclaim.

## III. Alternatively, this Matter should be Transferred to New Jersey.

"Even where venue is proper, 28 U.S.C. § 1404(a) empowers district courts to transfer a case to another district court where it might have been brought for the

convenience of parties and witnesses and the interest of justice." *Ziegler v. Polaris Industries, Inc.*, No. 1:21-CV-956, 2023 WL 7448736 at *3 (W.D. Mich. Apr. 24, 2023) (internal quotations and citations omitted). Attached as **Exhibit 9**. This Court should not be burdened with duplicative litigation that has already been litigated for years in New Jersey. Transferring this case is the most efficient and just outcome.

In this matter, the District of New Jersey is the more appropriate forum. The parties have already spent multiple years litigating the same issues and underlying facts in the DCNJ matter. The only plausible reason Plaintiffs filed this case in Michigan, despite years of litigation in New Jersey, is an improper attempt to find a more sympathetic forum.

Additionally, a related matter is currently pending in the New Jersey District Court (DCNJ 2), making it the logical forum to consolidate or address overlapping legal and factual issues. Transfer under § 1404(a) is appropriate because it serves the interests of justice and aligns with the principles of judicial economy, party convenience, and witness accessibility.

A. Judicial Economy Favors Transfer

Judicial economy strongly supports transferring this case to the District of New Jersey. The New Jersey court has already presided over substantial portions of this dispute, including earlier litigation involving the same parties and issues. The

19

court's familiarity with the facts, claims, and procedural history reduces the time and resources required for a new court to familiarize itself with these matters.

Additionally, a related case remains pending in the New Jersey District Court (DCNJ 2). Adjudicating overlapping claims and issues in two separate forums creates a risk of inconsistent rulings and unnecessary duplication of judicial effort. By transferring this case to New Jersey, the Court ensures that all related claims are addressed in a single, coherent proceeding, promoting consistency and efficiency.

B. Interests of Justice Weigh Heavily in Favor of Transfer

The interests of justice are a central consideration in deciding a motion to transfer under § 1404(a). Here, transferring this case to New Jersey serves justice by:

- **Avoiding Forum Shopping:** Plaintiffs' decision to file this case in Michigan appears to be an attempt to circumvent the New Jersey court, which has already dismissed related claims. Allowing this case to proceed in Michigan undermines the purpose of § 1404(a) by encouraging strategic forum selection rather than fairness.

- **Preserving Judicial Resources:** The District of New Jersey has significant familiarity with the parties and the dispute, reducing the need to duplicate

20

efforts in Michigan. Consolidating related matters in a single forum promotes the efficient administration of justice.

- **Consistency of Rulings:** Keeping all related claims in one jurisdiction minimizes the risk of conflicting rulings on the same issues, which could arise if this Court and the New Jersey court address overlapping facts and legal questions.

## IV. In Further Alternative, this Matter should be Stayed Pending the Third Circuit Court of Appeals Ruling.

A district court "has the inherent authority to stay proceedings" and [g]enerally, courts consider four factors when determining whether to stay a case pending another proceeding: (1) the potential of another case to have a dispositive effect on this case; (2) judicial economy; (3) public welfare; and (4) hardship or prejudice to the parties, given the stay's duration." *Novak v. Federspiel*, 646 F. Supp. 3d 878, 896 (E.D. Mich. 2022).

Plaintiffs' premature filing of this lawsuit while their appeal remains pending is yet another indication that they are seeking a second bite at the apple. If they had confidence in their appellate arguments, they would have waited for the Third Circuit's ruling rather than attempting to preemptively re-litigate here.

A. The Third Circuit Appeal May Have a Dispositive Effect on this Case

The Third Circuit's ruling on Plaintiffs' appeal of the New Jersey District Court's dismissal could render this case entirely moot. The appeal centers on

whether a settlement agreement was reached between Plaintiffs and Defendants Lento and Firm. If the Third Circuit determines that a valid and enforceable settlement agreement exists, that agreement would supersede Plaintiffs' current breach of contract and promissory estoppel claims, as any alleged initial agreement would be extinguished by the settlement terms. Additionally, Plaintiffs would be precluded from pursuing claims related to the alleged initial agreement because an enforceable settlement would resolve all disputes arising from the same underlying facts.

Thus, allowing this case to proceed before the Third Circuit resolves the appeal risks wasting judicial resources and the parties' time and money on claims that may ultimately be moot.

B. Judicial Economy Strongly Favors a Stay

Proceeding with this litigation while the Third Circuit appeal remains unresolved would undermine judicial economy by duplicating efforts and risking inconsistent outcomes. Both cases involve the same parties, underlying facts, and legal issues. Staying this matter until the appeal is resolved would ensure that any rulings or proceedings in this Court align with the appellate court's determination of the enforceability of the alleged settlement agreement. A stay would also streamline this Court's proceedings by narrowing or entirely eliminating the issues in dispute.

Additionally, the DCNJ 2 matter has been stayed pending the outcome of the Third Circuit's resolution of the appeal. **Exhibit 5**.

C. <u>Public Welfare Would Not be Adversely Affected</u>

There is no public interest in litigating claims that could ultimately be mooted by the Third Circuit's decision. Conversely, staying this case would serve the public's interest in judicial efficiency and the fair administration of justice by preventing duplicative litigation and conserving judicial resources.

D. <u>Neither Party Would be Prejudiced by a Stay</u>

The duration of the stay is tied to the resolution of the Third Circuit appeal, and no undue hardship or prejudice would result to either party during this period. Plaintiffs will not be deprived of their ability to pursue certain claims if the Third Circuit rules against them, as the stay would merely postpone—not eliminate— their opportunity to litigate these issues. Conversely, Defendants would benefit from avoiding the cost and effort of defending against claims that may be invalidated by the appellate court's decision. A stay also prevents Defendants from facing potentially inconsistent rulings from two courts on overlapping issues.

## CONCLUSION

Plaintiffs have already litigated over this fact pattern in New Jersey. They lost. Their single count counterclaim was dismissed, and the matter is now pending before the Third Circuit. Instead of waiting for that ruling, they have come to this

Court in hopes of getting a second bite at the apple. The law does not allow litigants to forum shop, repackage, and file claims that they should have raised in a prior action. This Court must put an end to this improper attempt at re-litigation and forum shopping.

For the foregoing reasons, and highlighted in the accompanying Motion, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint with prejudice pursuant to Rules 12(b)(6) and 13(a). In the alternative, Defendants request that this Court transfer this case to the District of New Jersey pursuant to 28 U.S.C. §1404(a). As a further alternative, Defendant requests that this Court stay this action pending resolution of the appeal currently before the Third Circuit.

Respectfully submitted,
**HUBBARD SNITCHLER & PARZIANELLO PLC**

*/s/ Grace C. Ceccolini*
John A. Hubbard (P39624)
Eric A. Parzianello (P42797)
Grace C. Ceccolini (P86375)
Attorneys for Defendants
801 W. Ann Arbor Trail, Suite 240
Plymouth, Michigan 48170
(313) 672.7300

Dated: February 12, 2025        gceccolini@hspplc.com

24