# EXHIBIT D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEITH ALTMAN, et al.,

        Plaintiffs,

v.

JOHN D. LENTO, et al.,

        Defendants.

_____/

Case No. 2:24-cv-13345

Honorable Susan K. DeClercq
United States District Judge

### OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS (ECF No. 11)

Keith Altman and John Lento are both lawyers who run their own firms. In May 2020, they verbally agreed to work together on certain client matters. But their relationship quickly deteriorated, leaving nothing but litigation in its wake. First, Lento sued Altman in New Jersey federal court for, among other things, breaching the verbal agreement. Then, when that case was dismissed, Altman brought this lawsuit. Here, Altman alleges that Lento breached the same verbal agreement that was the subject of the first case, and that Lento maliciously prosecuted him by bringing the first case. As explained below, however, Altman's contract-related claims were compulsory counterclaims that should have been brought in the first case. And as to malicious prosecution, Altman has not stated a plausible claim for relief. Lento's motion to dismiss will therefore be granted.

# I. BACKGROUND

## A. Factual History

Keith Altman is a Michigan-based lawyer who runs the Law Office of Keith Altman, PLLC. ECF No. 1 at PageID.2. Joseph Lento is a Pennsylvania-based lawyer who runs the Lento Law Firm, LLC. *Id.* at PageID.1. Around May 2020, Altman and Lento supposedly entered into a verbal agreement, under which Altman would provide legal services to Lento's clients in student-defense matters. *Id.* at PageID.2. That agreement detailed how the parties would share fees and divide responsibilities. *Id.* at PageID.3. As to responsibilities, Lento would solicit cases and then refer them to Altman to handle. *Id.* As to fees, Lento would first deduct his marketing expenses from the total fee. *Id.* The parties would then split the rest of the fee 60/40, with 60% going to Lento and 40% to Altman. *Id.*

This arrangement continued for some time. *See id.* But somewhere along the way, the parties' relationship soured. *Id.* Allegedly, Lento was failing to pay Altman his share of the fees, and Lento soon racked up a massive debt for services rendered. *Id.*

Thus, in February 2022, the parties verbally agreed to modify their agreement. Now, after Lento's marketing expenses were deducted, Lento would receive 55% of the fee and Altman 45% of it. *Id.* at PageID.3–4. The parties then supposedly agreed

to modify their agreement once more, this time permitting Altman to take $100,000 per month from the fees to pay his employees' salaries. *Id.* at PageID.4.

Ultimately, these modifications proved fruitless, and so the parties began to end their working relationship. *Id.* Altman claims that at this time, Lento still owed him around $700,000 dollars in fees. *Id.* So when the parties started negotiating the terms of their breakup, Altman started with a demand for $500,000 to settle the matter. *Id.* at PageID.5. Lento countered with $365,000 and some other conditions, including mutual non-disparagement agreements and mutual release of all claims. *Id.* Altman then sent back to Lento a "memorandum of understanding," which memorialized these terms in writing. *Id.*

But the back and forth did not stop there. Rather than accepting Altman's version of the memorandum, Lento revised it further and sent back an unsigned copy to Altman. *Id.* Neither party appears to have signed this final copy. *See id.* at PageID.5–6.

At that point, the parties apparently called it quits. Rather than negotiating further, in August 2022, Lento ran to court and kicked off the first of several lawsuits. *Id.* at PageID.6.

## B. Procedural History

### 1. First District of New Jersey Case

In August 2022, Lento sued Altman in United States District Court for the District of New Jersey. *See Lento v. Altman (Lento I)*, No. 22-cv-04840 (D.N.J. Aug. 1, 2022), ECF No. 1. Lento's amended complaint asserted federal RICO claims and several state-law claims against Altman, including claims for breach of contract, bad faith, tortious interference with contract, and unjust enrichment. *Lento I*, No. 22-cv-04840 (D.N.J. Sept. 1, 2022), ECF No. 17. Lento's breach-of-contract claim focused on the original verbal agreement between the parties. *Id.* at PageID.220–22. Specifically, Lento alleged that Altman repeatedly breached the verbal agreement by failing to handle the cases assigned to him, failing to honor the terms of the split-fee arrangements, and soliciting clients without Lento's involvement. *Id.* at PageID.222.

In response to the amended complaint, Altman moved to dismiss for failure to state a claim under Civil Rule 12(b)(6). *Lento I*, No. 22-cv-04840 (D.N.J. Nov. 14, 2022), ECF No. 27. Altman did not move to dismiss for lack of personal jurisdiction or for improper venue. *See id.*

The district court granted Altman's motion in part and denied it in part. *Lento I*, No. 22-cv-04840 (D.N.J. June 27, 2023), ECF Nos. 39; 40; *see also* 2023 WL 4232158, at *19 (D.N.J. June 27, 2023). It dismissed Lento's federal RICO claims

- 4 -

but allowed some of his state-law claims to proceed. *Lento I*, 2023 WL 4232158, at *19.

After the motion was resolved, Altman filed an answer and filed one counterclaim for breach of contract. *Lento I*, 22-cv-04840 (D.N.J. Aug. 1, 2023), ECF No. 51. The counterclaim alleged that the "memorandum of understanding" was a binding contract that Lento violated by suing him. *Id.* at PageID.663–65. But in March 2024, the district court dismissed Altman's counterclaim on the merits for failure to state a claim. *Lento I*, 22-cv-04840 (Mar. 18, 2024), ECF Nos. 122; 123; *see also* 2024 WL 1154470 (D.N.J. Mar. 18, 2024), *aff'd*, No. 24-1899, 2025 WL 914306 (3d Cir. Mar. 26, 2025). Altman appealed the dismissal of his counterclaim to the Third Circuit Court of Appeals, but the court affirmed the District Court's dismissal. *See* No. 24-1899, 2025 WL 914306, at *4 (3d Cir. Mar. 26, 2025).

A few weeks later, the district court then *sua sponte* dismissed the remaining claims in the case, all of which were based on state law. *Lento I*, 22-cv-04840 (D.N.J. Apr. 10, 2024), ECF No. 146. In explaining this decision, the district court first noted that there was no longer federal-question jurisdiction, given that all federal claims had been dismissed. *Id.* at PageID.1676. The district court next noted that Lento's amended complaint did not sufficiently allege diversity jurisdiction, given that it failed to address the citizenship of the LLC law firm parties. *Id.* at PageID.1676–77. Although Lento had a motion to amend his complaint outstanding, the district court

- 5 -

denied the motion because it found that the proposed second amended complaint

suffered from these same jurisdictional defects. *Id.* at PageID1677–78. Finally, the

district court declined to exercise supplemental jurisdiction over Lento's remaining

state-law claims, choosing instead to dismiss them without prejudice so they could

be refiled in state court. *Id.* at PageID.1677. With that, the district court closed the

case. *Id.* at PageID.1678.

This dismissal effectively sparked another race to the courthouse, with Altman

and Lento each rushing to their preferred jurisdictions to refile their claims first. Like

a hydra, when one case fell, two more sprung up in its place.

### 2. Second District of New Jersey Case

For his part, Lento chose to refile his state-law claims in New Jersey state

court. *See Lento v. Altman (Lento II)*, No. 24-cv-05150 (D.N.J. Apr. 17, 2024), ECF

No. 1. Altman then timely removed back to federal court, invoking the federal

district court's diversity jurisdiction. *Id.* In his removal papers, Altman (unlike

Lento) properly alleged the LLC parties' citizenship, which established that the

parties are completely diverse.[1] *See id.* at PageID.2–3. That case was stayed pending

---

[1] Altman alleged that the Lento Law Firm, LLC, is a Pennsylvania limited liability
company, whose sole member is Joseph Lento, a Pennsylvania citizen. *Lento II*, No.
24-cv-05150 (D.N.J. Apr. 17, 2024), ECF No. 1 at PageID.2. And he further alleged
that the Law Office of Keith Altman, PLLC, is a Michigan professional limited
liability company whose sole member is Keith Altman, a Michigan citizen. *Id.* at
PageID.3. Given that the parties are the same here, and that the amount in

the outcome of Altman's Third Circuit appeal. *Lento II*, No. 24-cv-05150 (Nov. 12, 2024), ECF No. 34. After the appeal was decided, the stay was lifted, and, as of the date of this order, the case remains pending. *Lento II*, No. 24-cv-05150 (May 29, 2025), ECF No. 40.

### 3. This Case

Altman, on the other hand, chose to refile his claims in Michigan state court. ECF No. 1 at PageID.1. Lento then attempted to remove the case to the Eastern District of Michigan, but this Court remanded the case because Altman had named a Michigan citizen as a defendant, which destroyed complete diversity. *Id.*; *see also Altman v. Lento L. Firm*, 741 F. Supp. 3d 682, 684–85 (E.D. Mich. 2024).

The state court, however, soon dismissed the claims against the Michigan-based defendant with prejudice and dismissed the claims against Lento without prejudice. ECF No. 1 at PageID.1. After that, Altman refiled his claims against Lento in this Court directly. *Id.*

Specifically, Altman brings three claims against Lento here. First, he brings a claim for breach of contract against Lento as related to their original verbal agreement. ECF No. 1 at PageID.8. Second, he brings a claim for promissory estoppel related to that same verbal agreement. *Id.* at PageID.8–9. Third, he brings

---

controversy exceeds $75,000, these allegations also establish that diversity jurisdiction exists in this case, too. *See* 28 U.S.C. § 1332(a).

a claim for malicious prosecution in a civil proceeding, alleging that Lento frivolously and maliciously brought the *Lento I* lawsuit despite there being no basis to do so. *Id.* at PageID.9–10.

In February 2025, Lento moved to dismiss. ECF No. 11. He argues that all of Altman's current claims should have been brought as compulsory counterclaims in *Lento I. Id.* at PageID.60–62. Alternatively, Lento argues that Altman has failed to state any plausible claim for relief. *Id.* at PageID.62–69.

The motion has been fully briefed. *See* ECF Nos. 17; 18. A hearing on the motion is not necessary. E.D. Mich. LR 7.1(f)(2).

## II. LEGAL STANDARD

Under Civil Rule 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept

legal conclusions as true. *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) ("The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct."). If not, then the court must grant the motion to dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

## III. DISCUSSION

### A. Compulsory Counterclaims

Lento first argues that all of Altman's claims should be dismissed because they should have been brought as compulsory counterclaims in *Lento I*. ECF No. 11 at PageID.60–62.

Civil Rule 13 governs counterclaims. Subject to some exceptions not relevant here, the rule defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and "does not require adding another party over whom the court cannot acquire jurisdiction." FED. R. CIV. P. 13(a)(1)(A)–(B). As the word "compulsory" suggests, such a claim is mandatory; parties "must" assert any compulsory counterclaim they have at the time they serve their responsive pleading, or else the claim will be forever

barred. *Tyler v. DH Cap. Mgmt., Inc.*, 736 F.3d 455, 459 (6th Cir. 2013) (quoting *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)). Although strict, this compulsory-counterclaim rule "serves the purpose of bringing all relevant claims before the court in a single action," *id.*, which helps to promote efficiency, prevent piecemeal litigation, and conserve judicial resources, *see Provident Life & Accident Ins. Co. v. United States*, 740 F. Supp. 492, 496 (E.D. Tenn. 1990).

To determine whether a counterclaim arises out of the same transaction or occurrence (and is thus compulsory), the Sixth Circuit employs a "logical relationship" test. *Sanders v. First Nat'l Bank & Tr. Co.*, 936 F.2d 273, 277 (6th Cir. 1991). This test asks "whether the issues of law and fact raised by the claims are largely the same and whether substantially the same evidence would support or refute both claims." *Id.* (citing *Moore v. N.Y. Cotton Exch.*, 270 U.S. 593 (1926)). In applying this test, courts should also interpret the term "transaction" liberally, in that a transaction "may comprehend a series of many occurrences," even if not closely connected in time, so long as the occurrences are logically related. *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 287 (6th Cir. 2001) (quoting *United States v. S. Constr. Co.*, 293 F.2d 493, 500 (6th Cir. 1961), *rev'd in part on other grounds*, 371 U.S. 57, 83 (1962)).

With this context in mind, Altman's malicious-prosecution claim was not a compulsory counterclaim. Rule 13 required Altman to bring any claim that he had at

the time he served his responsive pleading. *See* FED. R. CIV. P. 13(a). But at the time Altman filed his answer in *Lento I*, his malicious-prosecution claim had not yet "matured, at least in substantial part" such that he had to assert it. *See Chan v. Priority Recs. LLC*, No. 07-cv-15449, 2008 WL 2447147, at *2 (E.D. Mich. June 18, 2008) (citing *New Britain Mach. Co. v. Yeo*, 358 F.2d 397, 410 (6th Cir. 1966)). That is because a malicious-prosecution claim requires that the proceedings at issue be terminated in the plaintiff's favor. *Friedman v Dozorc*, 312 N.W.2d 585, 603 (Mich. 1981). But when Altman served his answer, the proceedings in *Lento I* had not yet terminated in any way. For this reason, Altman's malicious-prosecution claim—which is based on the *Lento I* proceedings—would have been premature. *See Tyler*, 736 F.3d at 459 (recognizing that Rule 13 "is not a tool for plaintiffs to force defendants' counterclaims into court prematurely").

But the same cannot be said for Altman's claims for breach of contract and promissory estoppel. Without a doubt, these claims should have been brought as compulsory counterclaims in *Lento I*. That is because here, Altman's contract claims are based on the alleged verbal agreement that kicked off the parties' relationship. *See* ECF No. 1 at PageID.8. And in *Lento I*, Lento's contract claims were based on the exact same agreement. *See* No. 22-cv-04840 (D.N.J. Sept. 1, 2022), ECF No. 17 at PageID.220–22. Indeed, here, Altman concedes that "the underlying facts [in this case] are the same as the prior case." ECF No. 17 at PageID.298. Given that both

- 11 -

cases relate to breach of the same contract, "the issues of law and fact raised by the claims are largely the same," and "substantially the same evidence would support or refute both claims." *Sanders*, 936 F.2d at 277. Altman's claims for breach of contract and promissory estoppel are therefore barred by the compulsory-counterclaim rule. *See id.*

Altman's attempts to avoid this rule do not persuade. He mainly urges that the New Jersey district court "never [had] jurisdiction" in *Lento I*. ECF No. 17 at PageID.297. In support of this contention, Altman presents a mishmash of arguments loosely touching on personal jurisdiction, venue, and subject-matter jurisdiction:

> None of the alleged acts or occurrences occurred in New Jersey. The only contact which the parties have with New Jersey is an office that Defendants supposedly maintained. Though the presence of Defendants New Jersey office is under contention. Even if Defendants maintained office space in New Jersey presently, there is nothing at the time of the dispute in this case that places the parties in New Jersey and therefore under the jurisdiction of the District of New Jersey. Not a single party to this action is domiciled in New Jersey.

> The District of New Jersey failed to maintain jurisdiction over the claims present in Defendant[']s first lawsuit.

*Id.* at PageID.297–98.

If Altman means to suggest that the District of New Jersey lacked personal jurisdiction over him, or that it was an improper venue, these arguments come too little too late. Under Civil Rule 12, defendants must raise the defense of lack of personal jurisdiction or improper venue in an answer or pre-answer motion,

- 12 -

whichever is filed first, or else the defense is waived. *See* FED. R. CIV. P. 12(h). In other words, defendants must raise these arguments when they make their "first defensive move." *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 701 (6th Cir. 1978).

In this way, Rule 12 makes clear that if Altman had a problem with personal jurisdiction or venue in *Lento I*, he needed to raise these defenses in *that* case, not this one. *See id.* But Altman's "first defensive move" in that case was to move to dismiss for failure to state a claim. *Lento I*, No. 22-cv-04840 (D.N.J. Nov. 14, 2022), ECF No. 27. Altman did not also move to dismiss for either lack of personal jurisdiction or improper venue, though he certainly could have. *See id.* His failure to do so means he waived those defenses. *Blessing*, 988 F.3d at 898; FED. R. CIV. P. 12(h). Further, Altman spent about two years actually litigating *Lento I* on the merits in the District of New Jersey, which further supports a finding of waiver as to both personal jurisdiction and venue. *See Gerber v. Riordan*, 649 F.3d 514, 519 (6th Cir. 2011) (finding waiver of personal jurisdiction when "submissions, appearances, and filings" give plaintiffs a "reasonable expectation" that defendants will "defend the suit on the merits"); *Freeman v. Bee Mach. Co.*, 319 U.S. 448, 453 (1943) (finding same for venue). In effect, Altman lost his chance to raise these arguments long ago.

Alternatively, Altman may be suggesting that he need not have asserted the claims he brings here as compulsory counterclaims in *Lento I* because the District of

- 13 -

New Jersey would have lacked subject-matter jurisdiction over them. He seems to base this idea on the fact that, after dismissing all of Lento's federal claims, the New Jersey district court *sua sponte* dismissed the remaining state-law claims without prejudice. *Lento I*, 22-cv-04840 (D.N.J. Apr. 10, 2024), ECF No. 146. Altman repeatedly characterizes this dismissal as one for "lack of jurisdiction." *E.g.*, ECF No. 17 at PageID.289. Thus, according to Altman, if the district court lacked jurisdiction over the remaining state-law claims in Lento's amended complaint, it would have lacked jurisdiction over Altman's counterclaims, too.[2]

But this argument lacks merit. To start, Altman misunderstands why the *Lento I* court dismissed Lento's state-law claims. Contrary to Altman's belief, the dismissal was not for lack of subject-matter jurisdiction. True, the district court found that Lento had not established diversity jurisdiction because he did not properly allege the citizenship of the LLC parties. *Lento I*, 22-cv-04840 (D.N.J. Apr. 10, 2024), ECF No. 146 at PageID.1676–77. But that flaw did not mandate dismissal because, regardless of diversity jurisdiction, the district court had supplemental jurisdiction over Lento's state-law claims, *see* 28 U.S.C. § 1367, and over the one compulsory counterclaim Altman later filed, *see Maddox v. Ky. Fin. Co.*, 736 F.2d 380, 382–83 (6th Cir. 1984) (recognizing compulsory counterclaim is "within the

---

[2] When appealing the dismissal of his counterclaim, Altman made the same argument before the Third Circuit, but the court had no trouble rejecting it. *See Lento I*, 2025 WL 914306, at *2 n.1.

ancillary jurisdiction of the federal district court"). Properly understood, therefore, the dismissal was not the result of any jurisdictional defect. Instead, the dismissal was a textbook exercise of the district court's discretion to decline supplemental jurisdiction after all federal claims were dismissed. *See* 28 U.S.C. § 1367(c)(3).

Critically, this decision not to exercise supplemental jurisdiction over Lento's state-law claims could not—and did not—strip the district court of its prior authority to adjudicate Altman's compulsory counterclaim. *See Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 181 n.10 (3d Cir. 1999) ("[A]lthough exercising supplemental jurisdiction over one claim and declining to exercise jurisdiction over other claims is unusual, it is not an abuse of discretion." (quoting *Southerland v. Hardaway Mgmt., Inc.*, 41 F.3d 250, 256–57 (6th Cir. 1994))). It was entirely proper for the district court to first exercise supplemental jurisdiction over Altman's one counterclaim and then decline jurisdiction over the rest of Lento's state-law claims. *See id.* For this reason, had Altman asserted the claims he brings here as compulsory counterclaims in *Lento I*, the New Jersey district court would have had supplemental jurisdiction over them as well. Altman lost his chance to assert these claims not by any lack of jurisdiction, but by his own hand.

Altman nonetheless asks this Court to excuse his procedural missteps. He argues that even if the counterclaims were compulsory, he was deprived of a chance to assert them in *Lento I*. ECF No. 17 at PageID.298. He points out that the district

- 15 -

court *sua sponte* dismissed *Lento I* while Lento had a motion to amend the complaint outstanding. *Id.* Had the district court granted that motion to amend, Altman says he could have asserted additional counterclaims—including the claims he brings here—in response. *Id.*

But Altman should not have depended on this contingency. There was no guarantee that the district court would grant Lento's motion to amend, and so there was no guarantee that Altman could assert additional counterclaims in response. In effect, Altman gambled on an uncertainty and lost. Not to mention, Altman already had one chance to assert counterclaims in *Lento I*—when he filed his answer to Lento's amended complaint. *See* FED. R. CIV. P. 13(a). Altman presumably knew that he had to bring compulsory counterclaims at that point, given that he actually brought one then. And Altman had two procedural paths to bring more: he could have amended his counterclaims as a matter of course or sought leave to amend. *See* FED. R. CIV. P. 15(a)(1)–(2). Yet he did neither. So not only did Altman fail to assert these claims when he was originally required to (in his answer), but he also bypassed the two options he had to fix that oversight. Having passed on every procedural option available to him, Altman cannot now claim that he was deprived of an opportunity to be heard. For whatever reason, Altman sat on these claims. The consequence is that they are forever barred. *Tyler*, 736 F.3d at 459.

Accordingly, Altman's claims for breach of contract and promissory estoppel will be dismissed with prejudice.

### B. Malicious Prosecution in Civil Proceeding

That leaves Altman's claim for malicious prosecution in a civil proceeding. Altman alleges that Lento "initiated a frivolous and malicious proceeding" against him when Lento brought *Lento I*. ECF No. 1 at PageID.9–10. Altman says that Lento brought suit "without probable cause or good faith basis, and with primary purpose to cause trouble or harm to [Altman]." *Id.* at PageID.10.

A claim for malicious prosecution in a civil proceeding requires (1) "prior proceedings terminated in favor of the present plaintiff," (2) "absence of probable cause for those proceedings," (3) "malice," which is described as "a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based," and (4) a "special injury." *Friedman*, 312 N.W.2d at 603. A special injury is an "injury to one's fame (as by a scandalous allegation), injury to one's person or liberty, [or] injury to one's property." *Id.* at 596. The injury must not be one that "would ordinarily result" to similar plaintiffs in similar lawsuits. *See Barnard v. Hartman*, 344 N.W.2d 53, 55 (Mich. Ct. App. 1983).

Here, Altman's malicious-prosecution claim fails. To start, Altman has not plausibly alleged that Lento brought *Lento I* without probable cause, or for an improper or malicious purpose. Rather, Lento appears to have brought that case for

- 17 -

the same reason that Altman brings this case—to adjudicate the disputes flowing from their messy separation. *See Friedman*, 312 N.W.2d at 603. Further, Altman does not allege any special injury that would differ from those suffered by similar plaintiffs in similar lawsuits. Indeed, to the extent that Altman alleges he suffered damage to his reputation or was forced to incur legal fees because of *Lento I*, these are injuries "of the same kind as that normally flowing from the maintenance of similar actions." *Silver Cap. Grp., LLC v. Underwood*, No. 355037, 2022 WL 815365, at *5 (Mich. Ct. App. Mar. 17, 2022) (quoting *Barnard*, 344 N.W.2d at 54–55). Although Altman may *feel* that he was maliciously prosecuted, he has not asserted any plausible claim for relief on this basis. Accordingly, this claim will be dismissed with prejudice.

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' motion to dismiss, ECF No. 11, is **GRANTED**. Plaintiffs' complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

/s/Susan K. DeClercq
SUSAN K. DeCLERCQ
United States District Judge

Dated: August 27, 2025

- 18 -